**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **APIARY INDUSTRIES LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 4:23-CV-00428-NCC** |
| ) | |
| **C&M LOGISTICS, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 40),

Memorandum in Support (Doc. 42), and Statement of Material Facts (Doc. 41), to which

Defendant filed a Response in Opposition to the Motion (Doc. 48), and Response to Plaintiff's

Statement of Facts (Doc. 49).  Also before the Court is Defendant's Motion for Summary

Judgment (Doc. 45), Memorandum in Support (Doc. 46), and Statement of Material Facts (Doc

47), to which Plaintiff filed a Response in Opposition to the Motion (Doc. 52), Memorandum in

Opposition (Doc. 54), and Response to Defendant's Statement of Material Facts (Doc. 53), and

Defendant filed a Reply (Doc. 55).  The parties requested oral arguments on their motions (Docs.

56, 57), and the Court heard arguments on July 29, 2024 (Doc. 61).  The parties filed post-

hearing supplemental briefs (Docs. 62, 64) which the Court has reviewed.

The motions are fully briefed and ready for disposition.  The parties have consented to

the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. §

636(c) (Doc. 19).  For the following reasons, Plaintiff's Motion for Summary Judgment (Doc.

40) will be **GRANTED,** and Defendant's Motion for Summary Judgment (Doc. 45) will be

**DENIED**.

# I. BACKGROUND

## A. Facts[1]

Plaintiff is an interstate property broker conducting interstate freight brokering services under federal operating authority conferred by the United States Department of Transportation ("USDOT") (Doc. 41 ¶ 1). Defendant is an interstate motor carrier conducting domestic transportation services under authority conferred by the USDOT (*id.* ¶ 2). On September 16, 2021, Plaintiff and Defendant executed the Broker-Carrier Agreement ("BCA") (*id.* ¶ 3, Doc. 49 ¶ 3).

On October 31, 2021, Plaintiff was contacted by Unique Logistics International (NYC) LLC ("Unique-NYC") a domestic freight forwarder, to make arrangements to transport goods from a warehouse at John F. Kennedy ("JFK") Airport in Jamaica, New York, to a warehouse in Fishkill, New York ("Fishkill") (Doc. 41 ¶ 6, Doc. 49 ¶ 7). Plaintiff contacted Defendant to offer the shipment and Defendant accepted the shipment by the method provided in the BCA, pursuant to the Load Confirmation (Doc. 41 ¶ 7-8, Doc. 41-4, Doc. 49 ¶ 7). Defendant picked up the goods in Jamaica, New York (Doc. 41 ¶ 8, Doc. 49 ¶ 8). While the goods were being transported by Defendant, all of the goods were stolen from Defendant's trailer, off the street, while in Defendant's possession (Doc. 41 ¶ 10, Doc. 49 ¶ 8).

On January 5, 2022, GAP, the owner of the goods, filed a claim of loss of goods (Doc. 47 ¶ 10, Doc. 53 ¶ 10A). Unique-NYC filed a claim of loss with Defendant, and Defendant did not

---

[1] Plaintiff and Defendant filed Statements of Fact with their motions for summary judgment (Docs. 41, 47), and each party responded in kind to those statements (Docs. 49, 53). The Court has reviewed each of these submissions, and the Court sets out the undisputed material facts in accordance with the summary judgment standard.

pay (Doc. 41 ¶ 12, Doc. 49 ¶ 12).  On July 13, 2022, Plaintiff paid a claim of loss to Unique-NYC in the amount of $128,690.89 as a result of the goods being stolen and not delivered (Doc. 41 ¶¶ 11-12, Doc. 49 ¶ 11).  Defendant has not paid any amount under the BCA, and relies on House Air Waybills to dispute its liability (Doc. 41 ¶ 12, Doc. 49 ¶ 12).

Plaintiff and Defendant[2] were not aware of the House Air Waybills prior to the theft. (Doc. 41 ¶ 13).  At some time after the theft, Defendant obtained six waybills: three entitled "House Air Waybills" (which this Court refers to as "HAWBs"), and three entitled "Air Waybills."  (Doc. 41 ¶ 14, Docs. 41-13, 41-14).  The face of the documents show the HAWBs were issued by Unique Logistics International (India) PVT LTD ("Unique-India") to GAP (Doc. 41-13).  The face of the Air Waybills show they were issued by Kuwait Airways to Unique-NYC (Doc. 41-14).  All six of the waybills list JFK Airport as the "Airport of Destination" (Docs. 41-13, 41-14).

## B.  Jurisdiction

In its Answer and Affirmative Defenses to Plaintiff's Complaint, Defendant raised the issues of subject matter jurisdiction, personal jurisdiction, and venue (Doc. 20).  The Court directed the parties to brief these issues, and for the Defendant to file an Amended Disclosure Statement identifying the citizenship of sole owner Cristian Toledo (Doc. 27).

"Under 28 U.S.C. § 1332(a), district courts have original diversity jurisdiction over civil actions when the matter in controversy exceeds $75,000, without considering interest and costs, and when the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001).  A

---

[2] Defendant attempts to controvert this fact by stating it was "generally aware" that Air Waybills were issued (Doc. 49 ¶ 13).  Defendant was silent as to any knowledge of the HAWBs (*id.*).

complaint that makes a good faith allegation of the jurisdictional amount is sufficient to confer jurisdiction. *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 931 (8th Cir. 2010). Further, "[c]omplete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). "Domicile" and "citizenship" are synonymous terms for the purposes of federal jurisdiction. *Wagstaff & Cartmell, LLP v. Lewis*, 40 F.4th 830, 839 (8th Cir. 2022) citing *Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1086 (8th Cir. 2017). Finally, for the purposes of diversity jurisdiction, an LLC's citizenship is that of each of its members. *OnePoint Solutions, LLC*, 486 F.3d at 346.

Plaintiff alleges that the amount in controversy is $128,690.89 (Doc. 1). Additionally, Plaintiff alleges that it is domiciled in the state of South Dakota and Defendant is domiciled in the state of New Jersey (Doc. 1 at 2 ¶ 7). More specifically, Plaintiff is an LLC organized under the laws of South Dakota with its principal place of business in Illinois (Doc. 1 at 1). Lucia Oxentenko is the sole member and owner and a citizen of Illinois (Doc. 8 at 1). Defendant is an LLC organized under the laws of New Jersey with its principal place of business in New Jersey (Doc. 1 at 2; Doc. 20 at 1). Christian Toledo is the sole owner (Doc. 28) of Defendant and is a citizen[3] of New York (*id.*). For purposes of diversity jurisdiction, the Court looks to the citizenship of the sole members of each LLC: Plaintiff is a citizen of Illinois and Defendant is a

---

[3] The Court is aware that Defendant used the term "resides" in its Amended Disclosure Statement (Doc. 28 at 1), and that residency does not establish citizenship for purposes of diversity jurisdiction. This appears to be a technical mistake, however, in that Defendant does not challenge diversity of citizenship and Plaintiff, in its response to Defendant's jurisdictional brief, affirms, again, that the parties are "domiciled in different states" (Doc. 35 at 2 ¶ 2).

citizen of New York.  Therefore, the Court is satisfied that diversity jurisdiction exists on these facts.

Plaintiff's Complaint includes two breach of contract claims brought pursuant to the parties' BCA (Doc. 1).  Defendant does not challenge the validity of the BCA.  Paragraph 8.1 of the BCA, entitled "Governing Law, Venue, & Jurisdiction and Costs" provides:

> Except for issues regulated under federal law such as the collection of transportation charges and the Carrier's liability for cargo loss, damage or delay, the Parties agree that all other provisions of this Agreement shall be governed and interpreted in accordance with the laws of Missouri.  **The Parties further agree that all legal proceedings by either Party seeking to enforce rights and/or obligations under this Agreement or otherwise relating to the interpretation or enforcement of this Agreement shall be commenced and litigated in the Circuit Court of St. Louis County, Missouri, or in the United States District Court for the Eastern District of Missouri, Central Division (St. Louis); and the Parties hereby submit themselves to the jurisdiction of the aforesaid courts.**  In the event either Party to this Agreement initiates legal proceedings to enforce rights under this Agreement, the prevailing Party shall be entitled to its court costs, reasonable attorney's and expert witness fees and other expenses incurred in asserting and defending such rights.

(Doc. 41-3 at 7) (emphasis added).  It is clear that the parties agreed to this specific forum,[4] and forum selection clauses are prima facie valid:

> "Parties to a contract may agree in advance to submit to the jurisdiction of a given court."  *See Nat'l Equip. Rental Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964).  "Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching."  *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) ("They are enforceable unless they would actually deprive the opposing party of his fair day in court.").

*Modular Concrete Docks, LLC v. Lone Star Lodge Resort and Marina, LLC*, No. 2:24-CV-4050-MDH, 2024 WL 2140253, at *1 (W.D. Mo. May 13, 2024).  The BCA forum selection clause

---

[4] Although the clause erroneously states "Central Division," it accurately names the Eastern District and its location in St. Louis.  There has been no challenge to this Court's jurisdiction on this basis, nor would such a challenge succeed.

contains the word "shall" in selecting this Court as the forum, and is not vague, ambiguous, or subject to interpretation. *See id*. at *2.

Defendant also challenges personal jurisdiction despite waiving his right to challenge the same by specifically consenting to personal jurisdiction via the BCA. *See High Plains Const., Inc. v. Gay*, 831 F.Supp.2d 1089, 1097 (S.D. Iowa 2011) ("parties can waive their right to challenge personal jurisdiction by agreeing to submit their contract to the governance of a certain court"); *St. Paul Fire & Marine Ins. Co. v. Courtney Enters, Inc.*, 270 F.3d 621, 624 (8th Cir. 2001) ("Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause.") (internal quotation marks and citations omitted)). The parties unambiguously submitted themselves to the jurisdiction of this Court.

Notwithstanding its agreement to bring claims in this venue and submit to this Court's jurisdiction, Defendant contends proper venue for this matter is located in the Hong Kong Special Administrative Region pursuant to HAWBs, which Defendant refers to as "Unique's Waybills and Conditions" (Doc. 29), and also "Unique's Bill of Lading" (Doc. 46). This matter, however, was brought by Plaintiff to enforce its rights pursuant to the BCA (Doc. 1). Pursuant to paragraph 8.2 of the BCA, any other documents or agreements not specifically incorporated are excluded:

> Entire Agreement & Severability: This Agreement and its attachments constitute the entire Agreement between the Parties and may not be altered, amended or varied without the written consent of the [sic] both Parties. No prior understandings or agreements of the Parties, whether oral or written, nor any documents not specifically incorporated into this Agreement, nor any course of conduct of the Parties before the Effective Date of this Agreement, shall have the effect of modifying the Parties' rights and obligations under this Agreement in any way. To the extent that any provision of this Agreement may be held to be invalid or unenforceable by a court of competent jurisdiction, such provision shall become ineffective as to all matters within the jurisdiction of that court. The

6

> court's holding, however, shall not be treated as affecting the validity or
> enforceability of any other provision of this Agreement, nor as affecting the
> validity or enforceability of any part of this Agreement in other jurisdictions.

(Doc. 41-3 at 7).  The Court finds that the forum selection clause is valid and venue is proper.

The Court further finds that Defendant waived his right to challenge personal jurisdiction by

specifically consenting to this Court's jurisdiction in the BCA.  Accordingly, all jurisdictional

requirements have been met.

### C.  Plaintiff's Complaint

Plaintiff filed a two-count Complaint (Doc. 1).  In Count I, Plaintiff alleges breach of

contract (*id*. at 4).  Plaintiff claims Defendant breached paragraph 4.1 of the BCA by failing to

pay the actual fair market value of the shipment after the goods were stolen while in Defendant's

possession and not delivered (*id*. at 4-5).  Plaintiff made demand for payment and Defendant

refused, resulting in damages in the amount of $128,690.89 (*id*. at 5).  Plaintiff also alleges that it

is entitled to recover reasonable attorney's fees, expert fees and court costs incurred in seeking to

enforce its rights and obligations (*id*.).  Plaintiff seeks judgment against Defendant in the

amount of $128,690.89, together with interest from December 1, 2021 through present,

Plaintiff's reasonable attorney's fees and court costs incurred (*id*.).

In Count II, Plaintiff alleges breach of indemnity agreement (*id*.).  Plaintiff claims

Defendant breached paragraph 5.1 of the BCA by failing to pay Plaintiff the amount it paid to

resolve the claim that arose out of Defendant's failure to deliver the shipment (*id*.).  Plaintiff

alleges it suffered damages in the amount of $128,690.89, together with accrued interest,

Plaintiff's reasonable attorney's fees, expert fees, and court costs, and seeks judgment in its favor

reflecting the same (*id*. at 5-6).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden rests with the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once the moving party demonstrates that there is no genuine issue of material fact, the "opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing a genuine factual dispute that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "[A] dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248). In ruling on a motion for summary judgment, all reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. ANALYSIS

Both parties agree that material facts are not in dispute and move for summary judgment. Plaintiff asserts it is entitled to summary judgment because the BCA governs Defendant's liability, which is the fair market value of the goods stolen, and that the indemnity provision also entitles Plaintiff to the full amount it paid to resolve the claim of loss (Doc. 40 at 9). Plaintiff further

asserts that Defendant cannot rely on HAWBs to negate the BCA and pay an amount less than the actual loss (*id.*). Plaintiff seeks summary judgment in its favor and against Defendant in the amount of $128,690.89 (Doc. 40).

Defendant asserts it is entitled to summary judgment because the HAWBs govern Plaintiff's claims, and that the HAWBs are a "through" bill of lading (Doc. 46). Defendant asserts Plaintiff's rights are subject to the terms of the HAWBs, and therefore Plaintiff's claims fail as a matter of law (*id.*). Defendant relies on the purported terms and conditions of the HAWBs to assert that this Court lacks personal and subject matter jurisdiction, venue is improper,[5] and that Plaintiff's claims are both time-barred and barred by a covenant not to sue (*id.*). Defendant also asserts that under the BCA, because Plaintiff "voluntarily" paid GAP's claim of loss, Plaintiff stands in the shoes of GAP, whose rights are limited to the terms of the HAWBs (*id.*). Finally, Defendant asserts that even if Plaintiff's claims survive, Plaintiff's recovery is limited to $9,772.65 pursuant to the terms and conditions of the HAWBs (*id.* at 13).

Courts are cognizant that the movement of goods across the globe and even across the country can involve many layers of overlapping agreements involving multiple parties. During the course of transportation of goods from the point of origin to the final destination, it is not uncommon for competing or overlapping agreements to exist between shippers, carriers, and intermediaries. *See Coyote Logistics, LLC v. Mera Trucking LLC*, 481 F.Supp.3d 1296, 1302 (N.D. Ga. 2020). In light of this complexity, the relevant statutes and caselaw governing global and domestic shipments seek to employ consistency and simplicity, upholding agreements specifically defining liability between parties so that the parties involved have certainty regarding

---

[5] The Court addressed these matters *supra*, and found that none of Defendant's venue or other jurisdictional arguments are meritorious.

their rights and protections. Attempts by owners to overreach in actions against carriers, or for carriers to shield themselves from liability by relying on documents to which they are not bound are generally disfavored and will fail when an unambiguous agreement exists between the parties. Such is the case here: Defendant attempts to shield itself from greater liability by injecting confusion in the form of potential upstream agreements or waybills. This case involves a clear agreement between a broker and carrier, as reflected by the Court's analysis below.

### A. The Broker-Carrier Agreement Applies

It is undisputed that Plaintiff and Defendant entered into the BCA, and the validity of the BCA has not been challenged.[6] The BCA includes the following relevant provisions:

**Legal Status and Relationship of Parties and Services**

1.4 Bills of Lading: Carrier shall issue a bill of lading for each shipment it accepts hereunder, in compliance with 49 U.S.C. §80101 et seq., and 49 C.F.R. Part 373 (and any amendments thereto). Carrier shall become fully responsible and liable for such shipments when it takes and/or receives possession thereof, regardless of whether a bill of lading is actually issued or not, and said Carrier responsibility and/or liability for each shipment shall continue thereafter until delivery of each such shipment to the consignee and the consignee signs the bill of lading or delivery receipt. In the event of any inconsistency between the terms of a Bill of Lading (including, but not limited to, payment terms) and any of the terms, conditions and/or provisions of this Agreement, the terms, conditions and provisions of this Agreement shall supersede and govern. Failure to issue a bill of lading or sign a bill of lading acknowledging receipt of a shipment by Carrier shall not affect the liability of Carrier.

…

**Carrier Liability; Cargo Loss and Damage Claims**

---

[6] Neither party has raised an issue with respect to whether 49 U.S.C. § 14706, the "Carmack Amendment," preempts the state law contract claims in this case. Plaintiff is a *broker* bringing a claim under the BCA, not a bill of lading, and such claims have been recognized as separate and distinct claims outside the scope of the Carmack Amendment. *Mid-America Freight Logistics LLC v. MDX Trucking Inc.*, No. 4:19CV2465 HEA, 2020 WL 13499330, at *3 (E.D. Mo. June 4, 2020) (listing cases).

4.1 Generally: Except as provided herein, the Carrier's liability for cargo loss or damage shall be governed by the provisions of 49 U.S.C. 14706 (the Carmack Amendment to the Interstate Commerce Act). It is understood and agreed that Carrier shall be liable for the actual fair market value of any goods lost or damaged while in the Carrier's possession and no limitations of liability set forth in Carrier's tariff shall apply. Exclusions in Carrier's insurance coverage shall not exonerate Carrier of its liability for cargo loss or damage or delay in delivery.

…

4.3 Broker Not Liable: Broker shall have no liability for any loss or damage to any goods transported by Carrier on shipments tendered by Broker. Carrier shall be solely and exclusively responsible for loss or damage to, or delay in delivery of, goods and shipments transported by Carrier under this Agreement, If, despite the fact that Broker is not liable for cargo loss, damage or delay claims, it pays such claim(s) to the Shipper, consignee or other third party, Carrier shall then be responsible to Broker for such claims(s), as though Broker (i) were the Shipper or (ii) had received an assignment of such claim(s) from the Shipper.

…

**Indemnification & Damages**

5.1 Indemnification: Carrier shall indemnify, defend and hold harmless Broker from and against any and all claims, demands or causes of action asserted against Broker by Shippers or third parties which in any way arise from or relate to Carrier's breach of its representations or warranties or its representations or warranties or its performance or failure to perform hereunder, including, but not limited to, claims for loss or damage to goods transported by Carrier, claims for delay in delivery, claims for conversion, claims for personal injuries or property damages, or any other claims arising from Carrier's performance or failure to perform services hereunder, and for all related court costs and reasonable attorney's and expert witness fees.

(Doc. 41-3).

The parties' rights and obligations are clear. Pursuant to paragraphs 1.4 and 4.1 of the BCA, Defendant agreed to be liable for the full fair market value of goods lost while in its possession with no limitations, and to the exclusion of any other document (including waybills) stating otherwise. Under paragraph 1.4, Defendant agreed to be liable whether or not Defendant

issued a bill of lading.  Pursuant to paragraph 4.3, the parties agreed Plaintiff was permitted to

pay claims to a Shipper, *whether liable or not*.  Defendant has not paid.

Defendant contends the last line in paragraph 4.3 must be read to put Plaintiff in the

shoes of the cargo owner, GAP, and as a result, Defendant's liability to Plaintiff depends on the

terms of HAWBs issued before the goods were shipped from India to New York.  In other

words, Defendant asserts that if Plaintiff pays a claim, Defendant is entitled to liability

limitations set forth in another agreement to which neither party to this lawsuit was named.  The

pertinent line of the BCA reads:

> [i]f, despite the fact that Broker is not liable for cargo loss, damage or delay
> claims, it pays such claim(s) to the Shipper, consignee or other third party, Carrier
> shall then be responsible to Broker for such claims(s), as though Broker (i) were
> the Shipper or (ii) had received an assignment of such claim(s) from the Shipper.

(Doc. 41-3 at 5).  The BCA also defines "Shipper" as follows:

> WHEREAS, Broker is a federally licensed property, transportation broker
> providing broker services as defined under 49 U.S.C. §13102(2) ("broker
> services") is authorized by its customer(s) (hereafter referred to as "Shipper(s)")
> to negotiate rates and arrange for transportation of shipments in intrastate and
> interstate commerce and has a need for duly licensed and qualified motor carriers
> to perform transportation services for Shipper-customers of Broker;

(Doc. 41-3 at 2).

The Court must analyze any potential ambiguity in the BCA under Missouri law, as

agreed by the parties in paragraph 8.1 (Doc. 41-3 at 7).  "Under Missouri law, the construction

and interpretation of a contract is a matter of law."  *Jacobson Warehouse Co., Inc. v. Schnuck*

*Markets, Inc.*, 13 F.4th 659, 668 (8th Cir. 2021) (internal quotation marks omitted).  Further,

> "The cardinal principle of contract interpretation is to ascertain the intention of
> the parties and to give effect to that intent." *J.H. Berra Constr. Co. v. City of*
> *Washington*, 510 S.W.3d 871, 874 (Mo. Ct. App. 2017) (quoting *Dunn Indus.*
> *Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003)). A
> contract is unambiguous when it "uses plain and unequivocal language," in which
> case we enforce it as written. *Deal v. Consumer Programs, Inc.*, 470 F.3d 1225,

> 1230 (8th Cir. 2006). A contract is ambiguous, on the other hand, when "its terms can be genuinely and reasonably construed in more than one way." *J.H. Berra Constr.*, 510 S.W.3d at 874. "To determine whether a contract is ambiguous, we consider the instrument as a whole, giving the words contained therein their ordinary meaning." *Deal*, 470 F.3d at 1230. "A contract is not ambiguous merely because the parties dispute its meaning." *Id*.

*Id.* at 668-669. Defendant asks the Court to read paragraph 4.3 of the BCA to mean that the parties intended for Defendant's liability to be governed by something besides the BCA. The plain meaning of part (i) of paragraph 4.3 is that Defendant shall pay Plaintiff what Plaintiff paid the Shipper. Defendant ignores part (ii) of paragraph 4.3, after the "or," and does not explain how receiving an assignment of a claim from a Shipper can be reasonably read as imparting unknown liability limitations upon it. These terms cannot be genuinely and reasonably construed as Defendant seeks to do so now and when based on a separate liability agreement which was not specifically incorporated and to which neither was aware at the time they entered the BCA.

Defendant's assertion flies in the face of the clauses specifically describing Defendant's liability: Defendant agreed to pay full fair market value of goods lost (paragraph 4.1); Defendant agreed to exclude all other agreements (paragraph 8.2); Defendant agreed that if terms of another agreement conflict with the BCA, the BCA governs (paragraph 1.4); and Defendant agreed to indemnify Plaintiff against any and all claims arising from or relating to Defendant's performance, including loss of goods (paragraph 5.1) (Doc. 41-3). Accordingly, the use of the phrase "as though broker were the Shipper" in paragraph 4.3 does not create ambiguity in the agreement or upend the clear intent of the parties because Defendant's reading is not reasonable. Further,

> This Court is cognizant that its "duty is confined to the interpretation of the contract which the parties have made for themselves ... and a court may not read into a contract words which the contract does not contain." *Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.*, 959 F.3d 903, 913 (8th Cir. 2020) (quoting *Textor Constr., Inc. v. Forsyth R-III Sch. Dist.*, 60 S.W.3d 692, 698 (Mo. App.

13

2001)). Under Missouri law, the "court's role is to determine the intention as manifested not by what the parties say now they intended but by the document." *Press Mach. Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir. 1984).

*W. Silver Recycling, Inc. v. Nidec Motor Corp.*, 509 F.Supp.3d 1106, 1113 (E.D. Mo. 2020). The contract does not state that a reference to "Shippers" incorporates that Shipper's liability agreement or limitations; however, the BCA does contain opposing language specifically spelling out Defendant's liability and excluding any outside agreements or documents. The intent of the parties is clear by the terms of the BCA.

Finally, even if the Court had determined this clause contained some ambiguity and the intent of the parties was not clear, Defendant is still liable to Plaintiff under the BCA's indemnification clause. Paragraph 5.1 provides:

> Indemnification: Carrier shall indemnify, defend and hold harmless Broker from and against any and all claims, demands or causes of action asserted against Broker by Shippers or third parties which in any way arise from or relate to Carrier's breach of its representations or warranties or its performance or failure to perform hereunder, including, but not limited to, claims for loss or damage to goods transported by Carrier, claims for delay in delivery, claims for conversion, claims for personal injuries or property damages, or any other claims arising from Carrier's performance or failure to perform services hereunder, and for all related court costs and reasonable attorney's and expert witness fees.

(Doc. 41-3 at 6). Indemnification clauses are defined and applied as follows:

> An indemnity clause is a contractual provision in which "one party agrees to answer for any specified or unspecified liability or harm that the other party might incur." *Praetorian Ins. Co. v. Site Inspectors*, LLC, 604 F.3d 509, 515 (8th Cir. 2010) (citation omitted). Under Missouri law, the rules applicable to construction of contracts also apply to indemnity agreements. *Union Elec. Co. v. Sw. Bell Tel. L.P.*, 378 F.3d 781, 786 (8th Cir. 2004) (citation omitted). An indemnification clause is enforceable if it is clear and unequivocal, applies to the claim in question, and the agreement was not signed under duress. *Id.* (citation omitted). Generally, sophisticated business entities like the parties to this suit "require less precision in the terms of the indemnity clause, and it is irrelevant whether the businesses bargained for the provision." *Praetorian*, 604 F.3d at 515.

*W. Silver Recycling v. Nidec Motor Corp.*, No. 4:20-CV-00837 JAR, 2021 WL 2142450, at *4 (E.D. Mo. May 26, 2021).  The indemnification clause is clear and enforceable, and Defendant does not argue otherwise.  Plaintiff is entitled to recover in accordance with its provisions.

### B.  The House Air Waybills Do Not Apply

The Court is not persuaded by Defendant's arguments that the HAWBs govern this case. Defendant relies on inapplicable cases that are clearly distinguishable.  Nevertheless, the Court will briefly address them below.

In *Norfolk Southern Railway Company. v. James N. Kirby*, 543 U.S. 14 (2004), the Supreme Court recognized that "[t]he international transportation industry clearly has moved into a new era – the age of multimodalism, door-to-door transport based on efficient use of all available modes of transportation by air, water and land,'" and that "[c]ontracts reflect the new technology, hence the popularity of 'through' bills of lading, in which cargo owners can contract for transportation across oceans and to inland destinations in a single transaction."  *Id.* at 25-26. (internal quotation marks omitted).  *Kirby* is "a maritime case about a train wreck," and the facts involved a shipment that traveled by sea and then railroad, and two bills of lading were at play, with the latter negotiated by an intermediary.  *Id*. at 18-22.   In *Kirby*, a main focus was ensuring uniformity of the interpretation of maritime contracts. *Id.* at 29-35.  The Supreme Court ultimately held that "[w]hen an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed."  *Id.* at 33.  In other words, "an intermediary binds a cargo owner to the liability limitations it negotiates with downstream carriers," in order to "ensure the reliability of downstream contracts for liability limitations."  *Id.* at 34.  The *Kirby* Court noted the importance of carriers being able to rely on the contract they make with an intermediary

15

instead of having to seek out more information regarding previous agreements throughout multimodal transportation. *Id*. at 35. *Kirby* also noted the importance of parties' knowledge of their specific liability by way of being a party to a bill of lading. *Id*. at 35.

Courts have interpreted the *Kirby* ruling to stand for the premise that "[a] contract between a carrier and a logistics company can limit the carrier's liability to the **cargo owner**." *Dubow Textile, Inc. v. Western Specialized, Inc.*, No. 18-2963 (DWF/LIB), 2021 WL 5505447, at *6 (D. Minn. Nov. 24, 2021) (emphasis added). Simply put, *Kirby* could apply to a suit between GAP and Defendant based on a bill of lading, which is not the case before the Court.

Defendant asks this Court to put Plaintiff in the position the *Kirby* Court determined was untenable for carriers – one in which Plaintiff would have to research and seek out previous agreements instead of relying on its own agreement to which it was a direct party. *Kirby's* holding does not require reliance on HAWBs instead of a contract entered into by Defendant and Plaintiff. In fact, the application of the BCA to the facts at hand accords with *Kirby's* concerns of carriers' ability to rely on their own agreements.

Defendant cites *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corporation*, 561 U.S. 89 (2010), which states "[a] through bill of lading covers both the ocean and inland portions of the transport in a single document," to support its argument that the HAWBs govern this dispute. *Id*. at 94. Defendant also cites *Spedag Americas, Inc. v. Bioworld Merchandising Inc.*, No. 3:17-CV-0926-BT, 2019 WL 4689011, *4 (N.D. Tex. Sept. 25, 2019), to assert that air waybills are through bills of lading. In *Spedag*, the bills of lading and air waybills "provide[d] for delivery of each of the shipments" to a warehouse further inland than the ports and airports. *Id*. The court reasoned that because the bills of lading and air waybills provided for the transportation "to ultimate delivery at places [] other than the airport" they were "through" bills. *Id*. Finally,

Defendant urges the Court to determine the HAWBs are not only bills of lading, but are "through" bills of lading, pursuant to *Siemens Energy, Inc.*, v. *CSX Transportation, Inc*., 446 F.Supp.3d 184 (E.D. Ky. 2020). [7]

"[C]ourts have generally looked to three relevant factors to determine whether a bill of lading is a through bill." *Id*. at 189.  The three factors are: "(1) the final destination on the bill, (2) the conduct of the relevant parties, including the shipper, intermediaries, and the carriers, and (3) the method by which the connecting carriers were compensated." *Id.*  These three factors "will assist the Court in determining whether a particular bill of lading covered the entirety of the transportation (a through bill), or, conversely, whether the transportation was broken in two separate legs such that the initial bill of lading was not a through bill." *Id*. at 190.

Here, it is unnecessary for the Court to determine whether or not the HAWBs or Air Waybills are through bills of lading because Defendant is not being sued by the cargo owner or a party who is relying on the terms of those documents.  Plaintiff is alleging breach of contract claims under the BCA.  Notwithstanding the application of the BCA to this matter, Defendant's arguments are unavailing because the Court would not determine the HAWBs are through bills of lading.

---

[7] A court may determine whether a bill of lading constitutes a through bill of lading on summary judgment, despite the question being mostly considered as one of fact.  *Siemens Energy, Inc.*, 446 F.Supp.3d at 189.  Where it is clear that "there is no genuine issue of material fact on this issue, simply a disagreement as to the legal significance of these facts," the question can be determined as a matter of law on summary judgment.  *Id.* at 193 citing *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002); *New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 410 (10th Cir. 1996) ("In this case, the parties do not dispute what happened, the dispute lies in what legal significance, if any, can be attached to the relevant events.").  Accordingly, this Court could properly determine that the waybills at issue are not through bills as a matter of law.

Defendant cites no cases in which a HAWB was found to be a bill of lading. Further, both the Air Waybills and the HAWBs fail to meet the standards of *Spedag* and *Siemens*. Both sets of waybills fail at the first step: neither lists Fishkill, New York as the final destination of the goods. The Air Waybills list JFK Airport as the "Airport of Destination," with no reference whatsoever to the final inland destination of Fishkill (Doc. 41-14); the HAWBs list JFK Airport as the "Airport of Destination" (Doc. 41-13). The Fishkill address does *appear* on the HAWBs, but under the section labeled "Accounting Information" (*id.*). The mere appearance of an address on a HAWB does not suffice under the relevant cases, and the HAWB fails to provide for transportation to the final destination beyond the airport.

The second factor, the conduct of the parties, also dooms the HAWBs. Plaintiff and Defendant executed the BCA detailing their relationship and liabilities, to the exclusion of all other documents, and Defendant accepted shipment pursuant to it. Defendant seeks to rely on HAWBs despite neither Plaintiff nor Defendant having seen them until copies were obtained during the claims handling process (Doc. 41-1 at 3-5).

For the conduct analysis, the breakdown of the goods from three planeloads to multiple sub-shipments is conduct that cannot be overlooked. The warehouse in Jamaica, New York, where the planeloads were broken down, is not mentioned anywhere on the HAWBS or Air Waybills. None of the cases relied on by Defendant involve a large shipment that was broken down into smaller shipments before reaching its final destination.

Further, according to the affidavit of David Batres ("Batres"), the Air Import Operation Manager for Unique-NYC, the HAWBs issued by Unique-India were internal documents prepared by Unique-India and provided to GAP, and served as a receipt for GAP's purchase of the goods for the purpose of clearing U.S. Customs (Doc. 41-2 at 3). Batres attests that Unique-

18

NYC took possession of the shipment at the warehouse, cleared it through U.S. Customs, and then broke it down into sub-shipments, and utilized various logistics providers, including Plaintiff, for delivery of the sub-shipments (*id.* at 4). Batres stated that Unique-NYC did not hire Defendant, provide any waybills to Defendant prior to or at the time the shipment was picked up, and had no contact with Defendant prior to the shipment being stolen (*id.*).

The Court is without sufficient information to analyze the third factor, but the first two factors have already foreclosed a determination that the HAWBs or Air Waybills are through bills of lading. As a result, the cases cited by Defendant in which parties rely on through bills of lading do not apply here.

Finally, under similar factual scenarios, where the dealings between the parties were domestic, courts have upheld the terms of a BCA. For instance, where a carrier established its liability in a Broker-Carrier Agreement, agreed it would be liable for the full value of the shipment, and also agreed that the Broker-Carrier Agreement would control, the Broker-Carrier Agreement was binding. *Coyote Logistics,* 481 F.Supp.3d 1296. "A carrier may set its liability through its dealing with a shipper or the shipper's intermediary but may not take advantage of limitations of liability to which it is not a party. In other words, a carrier may enforce its contractual protections but must also fulfill its contractual obligations." *Id.* at 1302. The carrier accepted the terms of the Broker-Carrier Agreement when it picked up the cargo. *Id.* at 1304. Further, the court reasoned that the result "gives full effect to the parties' agreement" and that enforcing provisions from a different agreement that would benefit the carrier would be a windfall for the carrier. *Id*. at 1303-04; *see also Landstar Ranger, Inc. v. Triple M Logistics, Inc.*, 3:22-CV-00056-HES-LLL, 2023 WL 4925870, at *4-5 (M.D. Fla. June 28, 2023) ("downstream carriers cannot benefit from upstream contracts when the carrier itself negotiates for greater

liability;" to allow a carrier to incur less liability than agreed would be a windfall for the carrier and deprive the broker of something it negotiated and paid for; and the carrier was liable for the amount paid by the broker).

Defendant here faces the exact liability to which it agreed and must be held to its contractual obligations.  The BCA is clear, and the Defendant freely negotiated its terms.  A decision against enforcement of the BCA would result in a windfall for Defendant, the party ultimately responsible for the loss.  It would also result in a detriment to the Plaintiff, who acted in reliance on the BCA.  *See Coyote Logistics*, 481 F.Supp.3d at 1304.  Finally, "[t]he public interest and Missouri law both favor judicial enforcement of contracts according to their own terms."  *Keller v. PennyMac Loan Services, LLC*, No. 3:24-CV-05041-MDH, 2024 WL 4242481, at *1 (W.D. Mo. Sept. 19, 2024).

The Court finds the BCA is the operative document for the claims at bar between these parties, Defendant breached the BCA, and Plaintiff is entitled to damages in the amount of $128,690.89.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 40) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 45) is **DENIED**.

**IT IS FINALLY ORDERED** that the Clerk is directed to enter Judgment in favor of Plaintiff and against Defendant in the amount of $128,690.89.

A separate judgment will accompany this memorandum and order.

20

Dated this 18th day of October, 2024.

   /s/ Noelle C. Collins

NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE